THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| **JANE DOE, an individual,** | *** REDACTED *** **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | |
| **NEBO SCHOOL DISTRICT, a Utah state government entity; DYLAN PORTER DEWEY, an individual; and DOES 1-5,** | **Case No. 2:23-cv-00812-JCB** |
| **Defendants.** | **Magistrate Judge Jared C. Bennett** |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have consented to Judge Jared C. Bennett conducting all proceedings in this case, including entry of final judgment.[1] Before the court are: (1) Defendant Dylan Porter Dewey's ("Mr. Dewey") motion to dismiss;[2] and (2) Defendant Nebo School District's ("District") motion for summary judgment.[3] The court held oral argument on both motions on March 18, 2024.[4] After hearing argument from the parties' counsel, the court took the motions under advisement.[5] The court has carefully considered the parties' written submissions on the motions and counsel's oral arguments. Now being fully advised, the court enters the instant Memorandum Decision and Order on the

---

[1] ECF No. 14.

[2] ECF No. 22.

[3] ECF No. 26.

[4] ECF No. 43.

[5] *Id.*

motions. Based upon the analysis set forth below, the court denies the motion to dismiss without prejudice and the motion for summary judgment with prejudice.

## BACKGROUND

Plaintiff Jane Doe ("Ms. Doe") was a student at a neighboring high school to Spanish Fork High School where Mr. Dewey was employed.[6] The District governed both the high schools.[7] In April 2018, Ms. Doe and Mr. Dewey began communicating with one another in person and electronically.[8]

According to Ms. Doe's complaint—which quotes part of a probable cause statement from a felony information that was filed against Mr. Dewey—Mr. Dewey and then-16-year-old Ms. Doe engaged in a romantic relationship in April 2018.[9] Although the two were at different high schools, at least some of their physical interactions occurred in Mr. Dewey's office at Spanish Fork High School.[10] At one point in April 2018, Mr. Dewey picked Ms. Doe up at a gas station in Orem, Utah (which the court judicially notices is outside the District), and drove to "make-out point" in Mapleton, Utah (which the court judicially notices is within the District), where he kissed Ms. Doe and touched her breasts and buttocks.[11]

---

[6] ECF No. 2-2 at 2-4 of 6.

[7] ECF No. 2-2 at 2 of 8.

[8] ECF No. 2-2 at 3 of 8.

[9] ECF No. 2-2 at 3 of 8 (incorporating facts from probable cause statement attached to criminal information against Mr. Dewey).

[10] *Id.*

[11] *Id.*

Three months after this incident, Mr. Dewey was charged in the Fourth District Court of the State of Utah with Forcible Sexual Abuse as a person who occupied "a position of special trust" under Utah Code § 76-5-404, and, in the alternative, Unlawful Sexual Conduct under Utah Code § 76-5-401.2(2)(b)(iv).[12] State prosecutors amended the charges by dismissing the count alleging Forcible Sexual Abuse—including the position of special trust allegation—which left only the count of Unlawful Sexual Conduct to which Mr. Dewey pleaded "no contest."[13] In his plea agreement, Mr. Dewey agreed to the following allocution of facts: "On or about April 12-April 19, 2018, in Utah County, State of Utah, the defendant took [Ms. Doe] in his car to Mapleton. While in the car, Mr. Dewey touched [Ms. Doe's] breasts with the intent to gratify his sexual desires."[14] The court sentenced Mr. Dewey to 2 years of probation, which included a jail sentence of 90 days, and placement on Utah's sex offender registry.[15]

Ms. Doe filed her pseudonymous complaint initiating this action against Mr. Dewey and the District on ███, 2023 ("Filing Date"), in the Fourth District Court for the State of Utah.[16]

---

[12] ECF No. 2-2 at 5 of 8. The court also takes judicial notice of the publicly available information in *Utah v. Dewey*, No. 181402128 (4th Dist. Ct. 2018). Taking judicial notice of a public court docket does not convert a motion to dismiss into a motion for summary judgment. *See, e.g.*, *Rose v. Utah State Bar*, 471 F. App'x 818, 820 (10th Cir. 2012) (holding that a court may take judicial notice of state-court disciplinary proceedings without converting a motion to dismiss into one for summary judgment).

[13] *Utah v. Dewey*, No. 181402128 (4th Dist. Ct. 2018) (stating that on November 2, 2018, Mr. Dewey pleaded "no contest" to the amended charge of Unlawful Sexual Conduct).

[14] *Id*. (November 2, 2018 "Statement of Defendant in Support of No Contest Plea and Certificate of Counsel" at page 2).

[15] *Id*. (stating that on December 19, 2018, Mr. Dewey was sentenced to two years of probation including 90 days in jail).

[16] ECF No. 2-6 (docket sheet from the 4th District Court in Provo, Utah). Because this portion of the facts is relevant to the District's Motion for Summary Judgment, the court is relying on information outside of the pleadings regarding Ms. Doe's 18th birthday.

This date was the last day Ms. Doe could file under the applicable limitations period.[17] Ms.

Doe's complaint alleges that Mr. Dewey committed sexual battery/assault against her and that the

District violated Title IX of the Civil Rights Act of 1964 by not taking corrective action against

Mr. Dewey that purportedly could have prevented the commission of the above-referenced crime

against Ms. Doe.[18] Ms. Doe did not seek permission to proceed pseudonymously in this action

prior to or contemporaneously with filing her complaint.

The District removed the Fourth District action to this court on November 7, 2023.[19] The

District then moved to compel Ms. Doe to obtain permission to proceed pseudonymously in this

action.[20] Ms. Doe did not oppose the motion,[21] and, consequently, the parties filed a stipulated

motion to allow Ms. Doe to proceed pseudonymously.[22] The court granted that motion on

January 11, 2024.[23]

Shortly before the court granted the stipulated motion allowing Ms. Doe to proceed

pseudonymously, Mr. Dewey moved to dismiss this action for want of subject-matter jurisdiction

and for failure to state a claim upon which relief can be granted.[24] Mr. Dewey contends that this

court lacks jurisdiction over this action because Ms. Doe was required to file a Notice of Claim

---

[17] ECF No. 28-1 at 2 (sealed).

[18] ECF No. 2-2 at 5-8 of 8.

[19] ECF No. 2.

[20] ECF No. 20.

[21] ECF No. 21.

[22] ECF No. 23.

[23] ECF No. 30.

[24] ECF No. 22.

with the District under the Utah Governmental Immunity Act ("UGIA").[25] Specifically, Mr.

Dewey claims he was acting within the "color of authority" as a District employee during his

illegal rendezvous with Ms. Doe at "make-out point."[26] Ms. Doe's failure to file a Notice of

Claim with the District, Mr. Dewey argues, deprives this court of subject-matter jurisdiction.[27]

      Days after Mr. Dewey's motion to dismiss, the District filed a motion for summary

judgment.[28] Therein, the District contends that because Ms. Doe failed to seek permission to

proceed pseudonymously before or contemporaneously with filing her complaint, her lawsuit did

not commence on the Filing Date, but on January 11, 2024, when this court granted her motion

to proceed pseudonymously. Because January 11, 2024, is well outside the applicable four-year

limitations period, the District argues that this action was untimely and should be dismissed.[29]

Below, the court addresses Mr. Dewey's motion first followed by the District's and denies both.

**ANALYSIS**

## I.   Mr. Dewey's Motion to Dismiss Is Denied Without Prejudice.

      The court denies Mr. Dewey's motion to dismiss under Fed. R. Civ. P. 12(b)(1) because

the facts regarding jurisdiction and the merits are intertwined, and Ms. Doe has stated a plausible

claim for battery under Fed. R. Civ. P. 12(b)(6). "'[A] court is required to convert a Rule 12(b)(1)

---

[25] Utah Code Ann. § 63G-7-402 ("A claim against . . . an employee for an act or omission occurring . . . under color of authority, is barred unless notice of claim is filed . . . within one year after the claim arises . . . .").

[26] ECF No. 22. Because Mr. Dewey argues only that he acted under color of authority, this Memorandum Decision and Order addresses only that phrase under the UGIA.

[27] *Id*.

[28] ECF No. 26.

[29] *Id*.

motion to dismiss into a Rule 12(b)(6) motion or a [Fed. R. Civ. P. 56] summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case.'"[30] This intertwining occurs when "resolution of the jurisdictional question requires resolution of an aspect of the substantive claim."[31]

For example, in *Pringle v. United States*, the United States moved to dismiss a claim under the Federal Tort Claims Act for want of subject-matter jurisdiction.[32] Specifically, the government argued that the district court lacked subject-matter jurisdiction over the action because the plaintiff's claims were related to his status as a military member, which is outside the applicable waiver of sovereign immunity.[33] However, the United States Court of Appeals for the Tenth Circuit held that the district court should have converted the United States' Rule 12(b)(1) motion to dismiss to either a motion under Rule 12(b)(6) or Rule 56 because whether the plaintiff's claims were related to his status as a military member was inextricably intertwined with resolving the factual merits of the claim.[34] The court pointed out that to resolve the jurisdictional issue, the district court made factual findings "concerning [the plaintiff's] duty status, whether his injuries occurred on a military base, the type of activity [the plaintiff] engaged in when the injury occurred, and whether there was direct military control over that activity."[35]

---

[30] *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).

[31] *Id*. at 1223.

[32] *Id*. at 1222.

[33] *Id*.

[34] *Id*. at 1223.

[35] *Id*. at 1223 n.3.

All of these findings were also necessary to decide the merits of the underlying tort claims.[36] Thus, jurisdiction and the merits were intertwined, which required the Rule 12(b)(1) motion to be converted to a motion under Rule 12(b)(6).

Similar to *Pringle*, resolving Mr. Dewey's motion to dismiss on jurisdictional grounds requires the court to make findings about his status (i.e., whether he was acting within the "color of authority"[37] as a District employee) when he improperly fondled Ms. Doe. If he was, then Ms. Doe was jurisdictionally obliged to file a Notice of Claim under the UGIA with the District *before* filing this action.[38] Conversely, if Mr. Dewey were not acting under color of authority, then no jurisdictional, pre-litigation notice of claim is required.[39] Hence, if the facts establishing Mr. Dewey's status at the time of his offense also establish the facts needed to address the merits of Ms. Doe's claim, the court cannot rely on Rule 12(b)(1) to decide Mr. Dewey's motion.

Here, the facts necessary to establish Mr. Dewey's status are also necessary to address the merits of Ms. Doe's battery claim. To determine whether Mr. Dewey was acting under "color of authority," the court would have to consider, at a minimum, whether the acts or omissions giving

---

[36] *Id*.

[37] Utah Code Ann. § 63G-7-202(4)(c) (stating that "no employee may be joined or held personally liable for acts or omissions occurring . . . under color of authority").

[38] *Id*. § 63G-7-402 ("A claim against . . . an employee for an act or omission occurring . . . under color of authority, is barred unless notice of claim is filed . . . within one year after the claim arises . . . ."); *Spoons v. Lewis*, 987 P.2d 36, 38 (Utah 1999) ("Insofar as Judge Lewis acted under 'color of authority' . . . to influence the sheriff's office with respect to Ms. Spoons' employment status, the district court would have no jurisdiction to entertain a claim based on the exercise of that influence unless Ms. Spoons filed proper notice of claim.").

[39] *Spoons*, 987 P.2d at 39 (stating that if Ms. Spoons was suing Judge Lewis outside her color of authority, then "the [UGIA]'s notice of claim provisions would not apply," and "the district court would have jurisdiction to entertain the suit").

rise to Ms. Doe's battery claim "occur[ed] at a time and place of authorized employment."[40] For

purposes of this case, "color of authority" will include factual findings, among others, as to

where Mr. Dewey picked up Ms. Doe, whether he was driving the District's vehicle when he

picked up Ms. Doe, whether Mr. Dewey was picking up Ms. Doe under the auspices of a school

activity, whether District policy allowed teachers to pick up students from another District high

school after school hours for educational purposes, and whether Mr. Dewey used

District-provided resources to communicate with Ms. Doe to arrange the meeting that resulted in

the criminal act. All these same factual findings are also relevant to the underlying battery claim.

Accordingly, the overlap between the jurisdictional facts and the facts on the merits overlap and

require the court to address Mr. Dewey's motion under Rule 12(b)(6).

Under Rule 12(b)(6), Ms. Doe states a plausible claim for relief. To survive a motion to

dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"[41] A claim is plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."[42] Courts "accept the well-pleaded facts alleged

as true and view them in the light most favorable to the plaintiff."[43] But courts should not accept

---

[40] *Acor v. Salt Lake City Sch. Dist.*, 247 P.3d 404, 410 (Utah 2011) (interpreting "color of authority" under Utah Code Ann. § 52-6-201(1) where school teacher was acquitted of molesting a student and was seeking reimbursement for her defense).

[41] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[42] *Id.*

[43] *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144 (10th Cir. 2023) (quotations and citation omitted).

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[44] After disregarding such statements, courts "look to the remaining factual allegations to see whether [the plaintiff] ha[s] stated a plausible claim."[45]

Here, Ms. Doe states a plausible claim for relief against Mr. Dewey in his personal capacity. Specifically, Ms. Doe alleges "sexual battery/assault" against only Mr. Dewey without referring to the District as his employer or asserting that the District is liable in a *respondeat superior* capacity.[46] The elements for battery under Utah law are: (1) deliberate contact between the defendant and the plaintiff; and (2) that contact was harmful or offensive at law.[47] Ms. Doe's complaint alleges that Mr. Dewey picked up Ms. Doe, who was a minor, at a gas station outside the District's boundaries; drove her to "make-out point"; placed Ms. Doe on his lap; took off Ms. Doe's shirt and bra; and began kissing/fondling her breasts. These factual allegations plausibly plead both that Mr. Dewey acted in his personal capacity when he deliberately touched Ms. Doe, and, that touching was harmful and offensive at law (especially given that such conduct is a crime). Thus, Ms. Doe pleads a plausible claim of battery against Mr. Dewey.

Nevertheless, Mr. Dewey contends that this court should dismiss this action under Rule 12(b)(6) for Ms. Doe's failure to file a Notice of Claim under the UGIA because her complaint also alleges that Mr. Dewey was acting under color of authority as a District employee. Specifically, Mr. Dewey argues that under *Christensen v. Juab School District*,[48] the term "color

---

[44] *Iqbal*, 556 U.S. at 678.

[45] *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

[46] ECF No. 2-2 at 5.

[47] *Wagner v. Utah*, 122 P.3d 599, 603 (Utah 2005).

[48] 424 P.3d 108 (Utah 2017).

of authority" is interpreted broadly to include schoolteachers who are accused of sexually abusing a child outside of a school setting. Mr. Dewey argues that because Ms. Doe's complaint repeatedly references that Mr. Dewey was an employee of the District and that he and Ms. Doe had romantic interactions at Spanish Fork High School before the battery occurred, the complaint can be plausibly read to show that Mr. Dewey was acting under the color of authority when he fondled Ms. Doe, which would require Ms. Doe to have filed a Notice of Claim before filing suit.[49] And because she did not file that Notice, this court must dismiss the claims against Mr. Dewey with prejudice because the time for filing such a Notice has long passed.

However, Mr. Dewey's argument fails because *Christensen*'s interpretation of "color of authority" is not controlling under the UGIA. In *Christensen*, a schoolteacher was accused of sexually abusing a former student who had a sleepover with the teacher's daughter at the teacher's residence.[50] "The sleepover was not sanctioned by the Juab School District and occurred during Christmas break."[51] The state prosecutor charged the teacher with one count of aggravated sexual abuse because the teacher occupied "a position of special trust."[52] At trial, the district court granted a directed verdict in favor of the teacher as to being a person in a position of special trust, and the jury subsequently acquitted the teacher.[53]

---

[49] Utah Code Ann. § 63G-7-402.

[50] 424 P.3d at 111.

[51] *Id.*

[52] *Id.*

[53] *Id.*

Following his acquittal, the teacher sought reimbursement for his defense costs under

Utah Code § 52-6-201(1) ("Reimbursement Statute"), which requires the State of Utah to

reimburse public employees after successfully defending themselves against criminal charges

that were based on the government employee acting "under color of the . . . employee's

authority."[54] Juab School District refused to pay the teacher's defense costs, and the teacher filed

suit.[55] The district court ordered the district to pay the teacher's defense costs because the State

charged the teacher with acting in a position of special trust based on him being a public school

teacher, which qualified for "color of authority" under the Reimbursement Statute.[56]

Juab School District appealed and contended that the actual events of the alleged crime

were not employment related and, therefore, could not amount to color of authority under the

Reimbursement Statute.[57] The Utah Supreme Court began by recognizing that the purpose of the

Reimbursement Statute is "aimed at protecting public employees from the costs of successfully

defending against criminal charges that arise out of public employment."[58] The court next

acknowledged that "job-relatedness" for purposes of determining "color of authority" is broad

and "evaluated at a high level of generality, without regard to the actual guilt or innocence of the

charged party."[59] Specifically, the court held, "[i]t is *not the guilt or innocence* that matters under

---

[54] *Id.* (alteration in original) (quotations and citation omitted).

[55] *Id.*

[56] *Id.* at 111-12

[57] *Id.* at 112-13.

[58] *Id.* at 112 (quotations and citation omitted).

[59] *Id.*

the color-of-authority prong, but rather the *allegations within the criminal information*."[60] And because the State of Utah used the teacher's employment as grounds for seeking a harsher criminal penalty against him (i.e., occupying a "position of special trust"), the State could not retreat from that allegation and argue that the teacher was not acting within the color of authority for the alleged crime when it came time to reimburse the teacher's defense costs for the failed prosecution. In other words, if the prosecution uses the defendant's public employment as an element or aggravating factor of the alleged crime, then the prosecution is stuck with that choice if the jury acquits, and the acquitted employee seeks reimbursement for defense costs.

This court cannot interpret "color of authority" under the UGIA the same way *Christensen* interprets that phrase under the Reimbursement Statute. Courts should interpret identical statutory language found in different statutes *in pari materia* only when the different statutes "relate to the same person or thing, to the same class of persons or things, or have the same purpose or object."[61] That is not the case here. Whereas the Reimbursement Statute's objective is to protect "public employees from the costs of successfully defending against criminal charges that arise out of public employment,"[62] the purpose of the UGIA "is to afford the responsible public authorities an opportunity to pursue a proper and timely investigation of the merits of a claim and to arrive at a timely settlement, if appropriate, thereby avoiding the

---

[60] *Id.* (emphasis added).

[61] *Utah Cnty. v. Orem City*, 699 P.2d 707, 709 (Utah 1985).

[62] *Christensen*, 424 P.3d at 112 (quotations and citation omitted).

expenditure of public revenue for costly and unnecessary litigation."[63] These are clearly different

purposes.

Not only are the statutory purposes of the Reimbursement Statute and the UGIA different,

but the procedural mechanisms for determining "color of authority" under each statute are

different too. Under the Reimbursement Statute, "[i]t is *not the guilt or innocence* that matters

under the color-of-authority prong, but rather the *allegations within the criminal information*."[64]

Conversely, the UGIA's "application turns on *what in fact occurred*, not on what a defendant

asserts occurred."[65] In other words, under the Reimbursement Statute, "color of authority" is

determined by the *allegations* in the charging document and not the actual facts, but, under the

UGIA, "color of authority" is determined from "what in fact occurred" and not the parties'

allegations.[66] Thus, the procedural mechanisms for asserting and proving "color of authority"

under both statutes are different, which is further evidence that the court cannot interpret "color

of authority" *in pari materia* between the Reimbursement Statute and the UGIA.

In addition to the above-noted textual problems with interpreting "color of authority" *in

pari materia* between the Reimbursement Statute and the UGIA, Mr. Dewey's preferred reading

would ignore Fed. R. Civ. P. 8(d)(3). Rule 8(d)(3) provides that "[a] party may state as many

separate claims or defenses as it has, regardless of consistency." Here, Ms. Doe has pleaded a

battery claim against Mr. Dewey in his personal capacity and has pleaded a Title IX claim

---

[63] *Stahl v. Utah Transit Auth.*, 618 P.2d 480, 482 (Utah 1980).

[64] *Christensen*, 424 P.3d at 112 (emphasis added).

[65] *Crisman v. Hallows*, 999 P.2d 1249, 1251 (Utah Ct. App. 2000) (emphasis added).

[66] *Id.*

against the District in case Mr. Dewey is found to have acted under the scope or color of his

authority. This inconsistent pleading is precisely what Rule 8(d)(3) allows.

That said, "[t]he possible exception [to Rule 8(d)(3)] is when the legal cause of action

provides an exclusive remedy."[67] And, here, the UGIA provides the "exclusive remedy" for "an

action . . . against a governmental entity for an injury cause by an act or omission that occurs . . .

under color of authority."[68] However, "courts deny motions to dismiss when there is a question

whether the exclusive remedy applies."[69] And whether the UGIA applies to Mr. Dewey's battery

is precisely the issue here because "while failure to comply with the [UGIA] applies to claims for

conduct by governmental employees actually occurring in that capacity, it is not invoked for the

personal tortious conduct of a person who happens to also be a governmental employee merely

because he so asserts."[70] Therefore, allegations in Ms. Doe's complaint that Mr. Dewey was an

employee of the District and associated with Ms. Doe under color of authority of that capacity

are insufficient to determine at this stage of litigation.[71] Accordingly, because determining

whether a public employee was acting under color of authority pursuant to the UGIA "is

ordinarily a question of fact, and thus should be determined by the trier of fact,"[72] the court

---

[67] *In re Light Cigarettes Mktg. Sales Pracs. Litig.*, 751 F. Supp. 2d 183, 192 (D. Me. 2010).

[68] Utah Code Ann. § 63G-7-202(3)(a).

[69] *In re Light Cigarettes Mktg. Sales Pracs. Litig.*, 751 F. Supp. 2d at 192.

[70] *Crisman*, 999 P.2d at 1251; *see also Spoons*, 987 P.2d at 38-39.

[71] *Spoons*, 987 P.2d at 38-39 (holding that tort claims against state court judge could survive motion to dismiss despite lack of notice under the UGIA where complaint could be interpreted as naming the judge in her personal capacity instead of acting under color of authority).

[72] *Crisman*, 999 P.2d at 1251 (quotations and citations omitted) (holding that whether government employee's actions were within color of authority under UGIA was reserved for the trier of fact).

cannot factually determine from the pleadings that the UGIA applies here. And because the court cannot determine whether the UGIA applies, dismissing Ms. Doe's battery claim against Mr. Dewey for failing to comply with the UGIA is premature. Consequently, the court denies Mr. Dewey's motion to dismiss while acknowledging that this argument may be raised after additional factual development at summary judgment and, possibly, at trial.

## II.    The District's Motion for Summary Judgment on Statute of Limitations Grounds Is Denied with Prejudice.

Ms. Doe timely commenced this action under Utah law despite not obtaining permission to proceed pseudonymously prior to or contemporaneously with the filing of her complaint. Where, as here, a federal statute (i.e., Title IX) lacks its own limitation period, federal courts apply the forum state's general statute of limitations for personal injury claims.[73] In Utah, that general limitations period is four years.[74] Borrowing this limitations period from state law also requires applying a state's "coordinate tolling rules" into the applicable limitations period.[75] Relevant here is Utah Code § 78B-2-108, which precludes a minor from bringing a cause of action. This means that in the case of Ms. Doe, Title IX's four-year limitations period did not begin until she attained the age of 18, which the parties agree occurred on ███, 2019.

---

[73] *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212-13 (10th Cir. 2014) (holding that Title IX's limitation period is the general limitations period under state law).

[74] Utah Code Ann. § 78B-2-307(4).

[75] *King-White v. Humble Ind. Sch. Dist.*, 803 F.3d 754, 764 (5th Cir. 2015) (quotations and citations omitted) (holding that state law tolling rules applied to Title IX limitations period); *see also Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 926 F.2d 959, 962 (10th Cir. 1991) (stating that "a federal court applying a state's limitations periods should apply that state's tolling provisions as well").

Because Utah Code § 78B-2-102 requires that civil actions "be *commenced* only within the periods prescribed in this chapter, after the cause of action has accrued," Ms. Doe was required to "commence" her action against the District by no later than the Filing Date. An action is "commenced" under Utah law by, among other things, filing a complaint with the court.[76] "When a complaint is 'filed,' a copy must be 'deposited with the court.'"[77] Therefore, to comply with Title IX's limitations period, Ms. Doe had until the Filing Date to deposit a copy of her complaint with the court.

The parties agree that Ms. Doe deposited her complaint in this action on the Filing Date, with Fourth District Court for the State of Utah. The District does not contest that the Fourth District Court would have both jurisdiction and venue over Ms. Doe's claims against the District if Ms. Doe had complied with Utah R. Civ. P. 10(a)(2). Utah R. Civ. P. 10(a)(2) provides that "the title of the action must include the names of all the parties." The District contends that Ms. Doe's failure to comply with Utah R. Civ. P. 10(a)(2) by placing her actual name in the complaint's caption or at least seeking permission to proceed pseudonymously, failed to commence an otherwise timely-filed action for purposes of Utah's four-year limitations period.

---

[76] Utah R. Civ. P. 3 ("A civil action is commenced (1) by filing a complaint with the court, or (2) by service of a summons together with a copy of the complaint in accordance with Rule 4. If the action is commenced by the service of a summons and a copy of the complaint, then the complaint, the summons and proof of service, must be filed within ten days of such service. If, in a case commenced under paragraph (a)(2) of this rule, the complaint, summons and proof of service are not filed within ten days of service, the action commenced shall be deemed dismissed and the court shall have no further jurisdiction thereof.").

[77] *Fields v. Mountain States Tel. & Tel. Co.*, 754 P.2d 677, 679 (Utah Ct. App. 1988).

Where, as here, there is little caselaw in Utah courts interpreteting Utah R. Civ. P. 10(a)(2),[78] the Utah Supreme Court looks to "the federal rules and cases interpreting them" to construe similarly worded Utah rules of procedure.[79] Both sovereigns' Rules 10 are similarly worded, and the court notes that like the Utah Rules of Civl Procedure, "[t]here is no provision in the Federal Rules of Civil Procedure for suit against persons under fictitious names, and there are likewise no provisions for anonymous plaintiffs."[80] The court also recognizes that "though seemingly pedestrian, [Fed. R. Civ. P. 10(a)] serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly."[81] The Utah Supreme Court and its federal counterparts recognize that one way in which the general rule against anonymous pleading can be set aside is when "an important privacy interest [is] in need of protection."[82] The parties have stipulated that Ms. Does has an important privacy interest here.[83]

Although the Utah Supreme Court and federal courts uniformly recognize the possibility of proceeding pseudonymously in the interest of a qualifying privacy interets, neither the Utah nor Federal Rules of Civil Procedure explain how this is to be done. Utah courts have said nothing about how a plaintiff should go about requesting such permission. And the federal courts

---

[78] *Gardner v. Bd. of Cnty. Comm'rs of Wasatch Cnty.*, 178 P.3d 893 (Utah 2008).

[79] *First Sec. Bank of Utah Nat'l Ass'n v. Conlin*, 817 P.2d 298, 299 (Utah 1991).

[80] *Coe v. U.S. Dist. Ct. for Dist. of Colo.*, 676 F.2d 411, 415 (10th Cir. 1982).

[81] *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008); *see also Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997) ("Identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts.").

[82] *Gardner*, 178 P.3d at 907 (citing *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979)).

[83] ECF No. 23.

vary significantly both in their required procedures for obtaining permission to file a pseudonymous complaint and in the consequences that befall a plaintiff for failing to comply with those procedures. For simiplicity's sake—although nothing about this is simple—there are two approaches that federal courts apply to pseudonymous filing: (1) the strict approach, and (2) the flexible approach. Each is introduced briefly in order below.

On the one hand, the Sixth,[84] Eighth,[85] and Tenth Circuits[86] follow the strict approach. By illustration, in the Tenth Circuit, "[a]bsent permission by the district court to proceed anonymously, and under such other conditions as the court may impose (such as requiring disclosure of their true identity under seal), the federal courts lack jurisdiction over the unnamed parties, as a case has not been *commenced* with respect to them."[87] In other words, under the strict approach, a pseudonymous complaint that has not been judicially approved deprives the court of jurisdiction and fails to commence an action for limitations purposes.[88]

---

[84] *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636-37 (6th Cir. 2005).

[85] *Capers v. Nat'l R.R. Passenger Corp.*, 673 F. App'x 591, 594-95 (8th Cir. 2016) (per curiam).

[86] *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989).

[87] *Id.* (emphasis added).

[88] *M.A.C. v. Gildner*, 853 F. App'x 207, 211 (10th Cir. 2021) (affirming *sua sponte* dismissal of pseudonymous complaint for lack of jurisdiction recognizing that dismissal had the effect of being with prejudice because statute of limitations passing after complaint filed).

On the other hand, the Fourth,[89] Fifth,[90] Ninth,[91] and Eleventh Circuits[92] follow a flexible approach because they do not require court approval to file a pseudonymous complaint in order for the court to have jurisdiction over the action or for the action to "commence" for limitations purposes. For example, in *Doe v. Stegall*, the plaintiffs filed a pseudonymous complaint and later moved for a protective order to proceed anonymously.[93] The district court determined that the pseudonymous complaint deprived it of jurisdiction, denied the protective order, and dismissed the case.[94] The Fifth Circuit reversed the district court's dismissal and held that the pseudonymous plaintiffs "should have been permitted to proceed under fictitious names. Therefore, the district court's determination that it lacked jurisdiction to issue a protective order cannot stand."[95] According to the Fifth Circuit—and the other courts that side with it—obtaining pre-filing approval to file a pseudonymous complaint is unnecessary because a post-filing

---

[89] *B.R. v. F.C.S.B.*, 17 F.4th 485, 496 (4th Cir. 2021) ("[W]e reject the suggestion that a plaintiff's failure to disclose her name to the court at the outset of the litigation denies the court the power to resolve the dispute. Rather, a district court that possesses jurisdiction over such an action— and thus has not just the power but the virtually unflagging duty to hear and decide it—also possesses, as a corollary, the inherent power to require the plaintiff to identify herself under seal to the court and to the defendants." (quotations, citations, and emphasis omitted)).

[90] *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981).

[91] *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-69 (9th Cir. 2000) (reversing district court's dismissal order of pseudonymous complaint and denial of post-complaint motion to proceed pseudonymously because privacy interests of plaintiff's outweighed public's interest in knowing plaintiff's identities, and defendants suffered no prejudice).

[92] *Plaintiff B v. Francis*, 631 F.3d 1310, 1315-16 (11th Cir. 2011) (recognizing that a complaint may proceed despite Fed. R. Civ. P. 10(a) if sufficient privacy interest exists in matter where pre-filing permission was not obtained).

[93] 653 F.2d at 182.

[94] *Id*. at 183.

[95] *Id*. at 186.

protective order under Fed. R. Civ. P. 26(c) suffices. More importantly, a pseudonymous filing

that is based on appropriate privacy interests does not deprive the court of jurisdiction. If such a

complaint allows a court to issue a post-filing protective order ratifying the previously filed

pseudonymous complaint, the action has clearly "commenced." Thus, under the flexible

approach, a plaintiff can file pseudonymous complaint, which commences the action and gives

the court jurisdiction.

Given these dualing federal approaches to Fed. R. Civ. P. 10(a), this court must decide

how the Utah Supreme Court would interpret Utah R. Civ. P. 10(a)(2) relative to when Ms.

Doe's pseudonymous complaint "commenced" this action for statute of limitations purposes. If,

as the District contends, the Utah Supreme Court would follow the strict approach, then this

action was not commenced until January 11, 2024, when this court approved Ms. Doe's motion

to proceed pseudonymously. This is obviously too late under Utah's four-year limitations period

for Title IX claims and would require dismissal.[96] However, if the Utah Supreme Court were to

apply the flexible approach, then Ms. Doe timely filed her pseudonymous complaint on the

Filing Date.[97] As analyzed in order below, the court determines that Utah Supreme Court would

---

[96] The court does not address equitable tolling because Ms. Doe did not raise that argument in her opposition to the District's motion. ECF No. 36. Therefore, any equitable tolling argument Ms. Doe could have presented is waived. *Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) ("Issues not raised in the opening brief are deemed abandoned or waived." (quotations and citation omitted)).

[97] In making this determination, the court recognizes that it is not engaging in "*Erie* analysis," per se, given that diversity jurisdiction is not at issue here. *Johnson v. Riddle*, 305 F.3d 1107, 1118-19 (10th Cir. 2002) (explaining that *Erie* analysis can be used whenever the rule of decision requires determining what a state's highest court would do). However, the court is predicting how the Utah Supreme Court would interpret Utah R. Civ. P. 10(a)(2) to determine whether pseudonymous complaints affect the commencement date for an action filed in state court using

adopt the flexible approach in construing Utah R. Civ. P. 10(a)(2) because: (A) the Utah Supreme Court's current pronouncements appear to favor the flexible approach; (B) the strict approach appears to contradict the United States Supreme Court's measuring stick for the commencement of a federal action in state court; and, in any event, (C) even under Tenth Circuit's strict standard, Ms. Doe's action commenced here because the District was aware of Ms. Doe's identity prior to her pseudonymous complaint.

A.  The Utah Supreme Court's Current Pronouncements Appear to Favor the Flexible Approach.

The Utah Supreme Court's statements governing pleadings generally and Utah R. Civ. P. 10 specifically appear to favor the flexible standard. For starters, the Utah Supreme Court's general approach to construing a complaint is "context specific and flexible."[98] That same flexibility seems to apply to Utah R. Civ. P. 10(a)(2) as well. For example, in *Gardner v. Board of County Commissioners of Wasatch County*, the plaintiffs' complaint contained identifiable, named plaintiffs and several "John Doe" plaintiffs.[99] Instead of moving to dismiss the "John Doe" plaintiffs for lack of jurisdiction under Utah R. Civ. P. 10, the defendant filed a "motion to limit the plaintiffs to those named in the complaint" with the state district court, and the district court granted that motion.[100] On appeal, the Utah Supreme Court held "that the district court did

___

a state statute of limitations. Consequently, the court will apply *Erie* principles to determing what the Utah Supreme Court would do here.

[98] *S. Utah Wildernss All. v. Kane Cnty. Comm'n*, 484 P.3d 1146, 1159 (Utah 2021) (quotations and citation omitted) (stating that under Utah R. Civ. P. 8, courts should use a "context specific and flexible approach" to construe pleadings "to do substantial justice" (quotations and citations omitted)).

[99] 178 P.3d at 899.

[100] *Id.*

not abuse its discretion in dismissing the John Doe plaintiffs."[101] This holding appears to confirm

that, unlike the strict approach, dismissal under Utah R. Civ. P. 10 is not "jurisdictional" because

not only does the Utah Supreme Court fail to mention jurisdiction at all in its discussion of Utah

R. Civ. P. 10, but it reviewed the district court's decision for abuse of discretion. This is

significant because the Utah Supreme Court reviews dismissals based on jurisdiction for

correctness.[102] Thus, like the courts adopting the flexible approach, the Utah Supreme Court does

not appear to view pseudonymous complaints as "jurisdictional" issues.

This court recognizes that a possible counterargument to this conclusion is that neither

the district court nor the parties raised the jurisidictional issue to the Utah Supreme Court in

*Gardner*, and, therefore, that court never had a chance to rule on whether Utah R. Civ. P. 10(a)(2)

presents a jurisdictional issue. However, this court cannot give that counterargument any weight

because this court will not assume that the Utah Supreme Court failed to do its job. As that

esteemed tribunal has frequently stated, "subject matter jurisdiction is an issue that can and

should be addressed sua sponte when jurisdiction is questionable."[103] So, even though neither the

district court below nor the parties raised a jurisdictional issue in *Gardner*, the fact that the Utah

Supreme Court did not find jurisdiction "questionable" when presented with pseudonymous

plaintiffs under Utah R. Civ. P. 10(a)(2) is strong evidence that Utah law does not consider

pseudonymous complaints jurisdictional. And if a pseudonymous complaint does not present a

---

[101] *Id*. at 908.

[102] *See, e.g.*, *Beaver Cnty. v. Qwest, Inc.*, 31 P.3d 1147, 1149 (Utah 2001) ("The determination of whether a court has subject matter jurisdiction is a question of law, which we review for correctness, according no deference to the district court's determination.").

[103] *Petersen v. Utah Bd. of Pardons*, 907 P.2d 1148, 1151 (Utah 1995).

jurisdictional problem for the court, then there is no reason why that action could not commence

for purposes of the relevant limitations period. This is consistent with the flexible approach.

Additionally, under its "context specific and flexible"[104] approach to pleading generally,

the Utah Supreme Court does not find defects in case captions to be fatal to a lawsuit's survival.

For example, in *Estate of Helen M. Faucheaux v. City of Provo*,[105] the decedent's husband, in his

capacity as the personal representative for his late wife's estate, sued the defendant for wrongful

death.[106] After six years of litigation, a trip to the Utah Court of Appeals, and a remand to district

court, the defendant moved to dismiss the estate as the only named plaintiff because it had no

capacity to sue for wrongful death, and no real party in interest could have been substituted in its

place.[107] The decedent's husband opposed the motion and argued that he was the real party in

interest despite what the caption said, but the district court dismissed the case again.[108] On

appeal, the Utah Court of Appeals reversed, and the Utah Supreme Court affirmed reversal but

on different grounds.[109] Specifically, the Utah Supreme Court stated that "captions alone are not

determinative. In identifying the parties to an action, courts must look to the entirety of the

pleadings."[110] The court then considered the complaint as a whole and determined that the

---

[104] *S. Utah Wilderness All.*, 484 P.3d at 1159 (quotations and citations omitted).

[105] 449 P.3d 112 (Utah 2019).

[106] *Id.* at 116.

[107] *Id.*

[108] *Id.*

[109] *Id.* at 119.

[110] *Id.* at 117-18.

district court erred because a defective caption "is not fatal to a case"; instead, it is "'merely a formal defect.'"[111]

Although the aforementioned case did not consider Utah R. Civ. P. 10(a)(2), the Utah Supreme Court's "flexible" approach is clearly manifest in terms of how it construes defective captions in complaints. Applying that same reasoning to Ms. Doe's complaint here, the complaint, as a whole, unmistakably puts the District on notice as to Ms. Doe's identity. For starters, the District was well aware of the criminal prosecution that occurred against Mr. Dewey, who was one of the District's employees. Indeed, Mr. Dewey was originally charged as a person in a special position of trust and eventually pleaded guilty to unlawfully touching Ms. Doe. The facts disclosed in the probable cause statement contain factual allegations that could not have come to law enforcement's attention but for the District's assistance in terms of Mr. Dewey's disciplinary record and other concerning issues that he had with students at Spanish Fork High School. Additionally, counsel candidly admitted at oral argument that the District was aware of Ms. Doe's identity before this action was filed. This flexibility that the Utah Supreme Court exercises in construing complaints with defective captions further supports the conclusion that Utah follows the flexible approach under Utah R. Civ. P. 10(a)(2). Therefore, when Ms. Doe filed her pseudonymous complaint, the Fourth District Court had jurisdiction, and this action commenced even though Ms. Doe did not have or seek judicial approval at or before filing.

---

[111] *Id.* at 119 (quoting *Jenkins v. Pullman Co.*, 96 F.2d 405, 408 (9th Cir. 1938)).

B.  <u>The Utah Supreme Court Is Unlikely to Adopt the Strict Approach Because It Does
Not Account for the Standard That the United States Supreme Court Articluated Long
Ago for Commencing Federal Causes of Action in State Courts</u>.

The Utah Supreme Court is unlikely to construe Utah R. Civ. P. 10(a)(2) according to the

strict approach because that approach appears to use the wrong measuring stick as to when a

federal action filed in state court commences under the applicable statute of limitations. Under

the strict approach, a pseudonymous complaint that is not judicially approved does not confer

jurisdiction on the court in which the action is filed and, therefore, does not commence the action

until judicial approval is obtained.[112] However, the United States Supreme Court has a different

measuring stick as to when a federal cause of action filed in state court "commences" even when

the state court lacks jurisdiction.

In *Herb v. Pitcairn*, a plaintiff filed a complaint alleging a federal cause of action in

Illinois state court.[113] Although the plaintiff filed the complaint before the two-year limitations

period had expired, the state court in which the plaintiff filed was bereft of jurisdiction over the

matter.[114] While the matter was pending before the jurisdiction-less court, the limitations period

expired.[115] When confronted with a statute of limitations argument, the Illinois Supreme Court

affirmed dismissal of the the action because:

> the city court . . . had no jurisdiction of the cause . . . , and . . . under
> Illinois law, commencing an action means starting it in a court that

---

[112] *See, e.g., M.A.C.*, 853 F. App'x at 211 (affirming *sua sponte* dismissal of pseudonymous
complaint for lack of jurisdiction, which failed to commence the action for limitations purposes
resulting in a dismissal with prejudice because the limitations period had expired while the
unapproved pseudonymous complaint was in federal court awaiting dismissal).

[113] 325 U.S. 77, 78 (1945).

[114] *Id.*

[115] *Id.*

> has the power to decide the matter involved, to issue process, to
> bring the parties to the particular cause before it and to render and
> enforce a judgment on the merits of said cause.[116]

Thus, according to the Illinois Supreme Court, filing the federal claim in a state court that lacked

jurisdiction meant that the action was not timely "commenced" under the limitations period.

The United States Supreme Court reversed because it was "unable to agree to an

interpretation of the federal statute by which a case is not 'commenced' for its purposes unless

instituted in a court with power to proceed to final judgment."[117] The Court reasoned that

> [a]n action is 'commenced' for these purposes as a matter of
> federal law when instituted by service of process issued out of a
> state court, even if one which itself is unable to proceed to
> judgment . . . . [W]hen process has been adequate to bring in the
> parties and to start the case on a course of judicial handling which
> may lead to final judgment, without issuance of new initial
> process, it is enough to commence the action within the federal
> statute.[118]

In other words, even if the court in which an action is filed lacks jurisdiction, if the process that

the jurisdiction-less court issued is valid and does not have to be re-issued from a subsequent

court, the federal cause of action was "commenced" for statute of limitations purposes. Thus,

under *Pitcairn*, which has not been overruled,[119] the validity of process, not jurisdiction, is the

measuring stick as to whether a federal action is commenced in state court.

---

[116] *Id.* (citations and quotations omitted).

[117] *Id.*

[118] *Id.* at 78-79.

[119] *See, Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 426 (1965) (following *Pitcairn*'s reasoning to find that a federal action filed in state court was equitably tolled); *Arakaki v. United States*, 62 Fed. Cl. 244, 251 (2004) (citing *Pitcairn* for the proposition that "[b]ecause 'process [was] adequate to bring in the parties and to start the case on a course of judicial handling which [might] lead to final judgment without issuance of new initial process, it [was] enough to

The validity of this *Pitcairn* measuring stick is confirmed by considering how other jurisdictional defects are handled in federal court. Consider diversity jurisdiction, for example. Diversity jurisdiction is specifically mentioned in the United States Constitution as one of the few bases for federal jurisdiction.[120] Even though a case at the time of filing may not meet the requirements for diversity jurisdiction and may be *dismissible*, a federal district court may keep the non-diverse case after trial and even on appeal as long as the non-diverse parties are eventually dismissed.[121] If, as the District argues, jurisdiction at the time a case is filed determines whether an action commences for statute of limitations purposes, then a party could assert a statute of limitations defense in its answer, litigate the non-diverse case until the limitations period has expired, and then move for summary judgment on grounds that the limitations period expired because the case was never "commenced" given that the federal court lacked diversity jurisdiction when the case was filed and did not obtain it until all the non-diverse parties were finally dismissed. But that is clearly not the law. And whereas the United States Constitution's text specifically grants federal courts diversity jurisdiction,[122] Fed. R. Civ. P. 10(a) never mentions jurisdiction at all much less terminates it for a party's failure to comply with that procedural rule. Thus, courts using the strict approach will tolerate defects in a constitutionally mandated source of jurisdiction—like diversity of the parties—at least for time, but will not

---

commence the action within the federal statute'" (quoting *Pitcairn*, 325 U.S. at 79) (second, third, and fourth alterations in original)).

[120] U.S. Const. Art. III, § 2.

[121] *Tuck v. United Servs. Auto. Ass'n*, 859 F.2d 842, 845 (10th Cir. 1988) (allowing dismissal of a nondiverse party after lack of complete diversity jurisdiction was discovered after trial on appeal).

[122] U.S. Const. Art. III, § 2.

tolerate *ab initio* a failure to comply with a rule of procedure whose jurisdictional bona fides are textually non-existent. Accordingly, using jurisdiction as a measuring stick for when an action commences is flawed, and the *Pitcairn* measuring stick must be correct because of its precedential value and logic.

Under the *Pitcairn* standard, Ms. Doe commenced her federal Title IX action in state court within the four-year limitations period because the process issued from the Fourth District Court was sufficient to initiate this action and, in fact, was included in the District's Notice of Removal to this court.[123] No court following the strict approach has held that new process needs to be issued once a court grants permission to proceed pseudonymously. And although the District initially reserved a right to challenge the sufficiency of service,[124] it has neither challenged the validity of the summons issued in the Fourth District Court action nor argued that this court must issue a new summons to properly bring any of the parties into this case. Indeed, the District believed that the pseudonymous issue could be resolved by stipulation, which did not require the service of new process. Hence, no new process had or will have to issue from this court in order for the parties to adjudicate this action here. Therefore, this court believes that, under *Pitcairn*, the Utah Supreme Court would find that the appropriate measuring stick for determing the commencement of Ms. Doe's federal action in state court is the validity of the

---

[123] ECF Nos. 2-4; 2-5.

[124] ECF No. 2 at 2. In any event, the District has not argued that process was deficient in support of their motion for summary judgment and, therefore, waived that argument. *Sawyers*, 962 F.3d at 1286 ("Issues not raised in the opening brief are deemed abandoned or waived." (quotations and citation omitted)).

Fourth District Court's process, not whether the Fourth District Court lacked jurisdiction due to Ms. Doe's purported failure to comply with Utah R. Civ. P. 10(a)(2). Ms. Doe's action is timely.

C. Even Under the Tenth Circuit's Strict Standard, Ms. Doe's Pseudonymous Complaint Commenced This Action.

Although this court concludes that the Utah Supreme Court would not follow the strict approach to pseudonymous complaints under Utah R. Civ. P. 10(a)(2), even assuming that Utah would adopt the Tenth Circuit's strict approach, Ms. Doe's complaint commenced this action. A close reading of *Gibbs* recognizes that Ms. Doe's action commenced when she filed it because the District was clearly aware of Ms. Doe's identity. The full passage of *Gibbs* on which the District relies to argue that an unapproved pseudonymous complaint does not commence an action provides as follows:

> In this case, the unnamed plaintiffs have made no request to the district court for permission to proceed anonymously, *nor have they otherwise disclosed their identities to the court or to the defendants*. Absent permission by the district court to proceed anonymously, and under such other conditions as the court may impose (such as requiring disclosure of their true identity under seal), the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them.[125]

The above-emphasized language strongly suggests that if the defendant is aware of the plaintiff's identity, despite a failure to disclose his/her name in the case caption, then Rule 10 cannot have the jurisdictional and commencement heft that *Gibbs* appears to bestow upon that rule.

_____

[125] 886 F.2d at 1245 (emphasis added).

This reading is consistent with the Federal Rules of Civil Procedure generally, which "evidence a clear preference to resolve disputes on their merits"[126] because the "touchstone is adequate notice," not technical perfection.[127] And this reading is also consistent with the purpose of Fed. R. Civ. P. 10(a) specifically, which seeks to avoid "problems to defendants engaging in discovery and establishing their defenses, and in fixing res judicata effects of judgments."[128] Indeed, if the District was already aware of Ms. Doe's identity, then the District would be able to form a defense and assess any res judicata issues. Even though the strict approach is strict, it does not impractically place form over substance to the point of depriving Ms. Doe of her day in court simply because of a captioning error that does not prejudice the District whatsoever.[129]

Here, the District was quite aware of the identity of Jane Doe before she filed her complaint in this action because of the assistance the District clearly provided during the criminal investigation of Mr. Dewey, his prosecution, and eventual guilty plea to say nothing of any employment action that the District itself took against him. This assistance is evident from

---

[126] *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 406 n.4 (6th Cir. 2019) (quotations and citations omitted) (finding that a complaint that did not comply with Fed. R. Civ. P. 10(a) was sufficient to give notice to defendants).

[127] *Id.*

[128] *Coe*, 676 F.2d at 415 (quotations and citations omitted).

[129] At oral argument, counsel for the District agreed that the only prejudice that the District would suffer as a result of Ms. Doe's purported violation of Utah R. Civ. P. 10(a)(2) is having to litigate the case. That is not prejudice. *See, e.g.*, *Sherrar v. Macy's Sys. & Tech. Inc.*, 724 F. App'x 736, 739 (11th Cir. 2018) ("Ms. Sherrard's increased costs in having to litigate are not sufficient to establish prejudice because [s]etting aside default will always increase litigation cost to the plaintiff because the plaintiff will actually have to litigate the case." (alteration in original) (quotations, citation, and emphasis omitted)).

the probable cause statement in the complaint. And counsel candidly admitted at oral argument that the District was aware of Ms. Doe's identify.

If the Federal Rules of Civil Procedure evince a clear preference to resolve disputes on their merits instead of on mere technicalities, then—even under the strict approach—Fed. R. Civ. P. 10(a) cannot have the permanent, dismissive consequences that the District seeks. To hold otherwise would require courts to dismiss an action not because the plaintiff's failure to comply with Rule 10 deprived the defendants or the public of important rights, but simply because the plaintiff—who is already known to the defendant—failed to write her correct name on a complaint. Under the circumstances, this amounts to a mere technicality for which permanent dismissal is entirely inappropriate if it is truly the merits that courts seek to adjudicate. Thus, even if the Utah Supreme Court were to follow *Gibbs* and its progeny to construe Utah R. Civ. P. 10(a)(2), then Ms. Doe's failure to obtain judicial approval before or contemporaneously with the filing of her pseudonymous complaint would not deprive the Fourth District Court of jurisdiction and would timely commence this action. Accordingly, the District's motion for summary judgment is denied with prejudice.

## CONCLUSION

For the reasons stated above, Mr. Dewey's motion to dismiss[130] is denied without prejudice, and the District's motion for summary judgment[131] is denied with prejudice.

---

[130] ECF No. 22.

[131] ECF No. 26.

IT IS SO ORDERED.

DATED this 29th day of April 2024.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge